IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LESLIE KLOTZ o/b/o
DESIREE MABE                                                              PLAINTIFF

             v.                    Civil No. 04-3080

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                   DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

The plaintiff in this case, Leslie Klotz (hereinafter "plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim on behalf of her minor daughter, Desiree Mabe (hereinafter "claimant"), for supplemental security income (hereinafter "SSI") benefits under § 1602 of Title XVI, *42 U.S.C. § 1381a*. Although both parties were given the opportunity to file an appeal brief, only the defendant has done so, herein (Doc. #8).[1] In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g).*

The history of the administrative proceedings is contained in the defendant's appeal brief and in the ALJ's written decision and will not be recounted here except as necessary.

The plaintiff asserts disability due to claimant's post repair cleft palate and lip, scoliosis,

---

[1] Plaintiff's appeal brief was to be filed on or before March 19, 2005. Absent such filing, the defendant filed her brief on April 7, 2005 (Doc. #8). On April 22, 2005, the plaintiff filed a Motion For Extension of Time to file her appeal brief (Doc. #9), which motion was denied by the undersigned on May 2, 2005 (Doc. #10).

AO72A
(Rev. 8/82)

depression, sleep apnea and attention deficit hyperactivity disorder (hereinafter "ADHD"). The issue before this Court is whether the Commissioner's decision is supported by substantial record evidence.

The ALJ followed the new sequential evaluation process, set forth in *20 C.F.R. § 416.924*. Under the new standard, a child must prove that he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.*

When passing the new law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

*142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).*

Consequently, under the new law, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More

specifically, a determination that a child is disabled requires the following three-step analysis. See *20 C.F.R. § 416.924(a)*. First, the ALJ must consider whether the child is engaged in substantial gainful activity. See *20 C.F.R. § 416.924(b)*. If the child is so engaged, he or she will not be awarded SSI benefits. See *id.* Second, the ALJ must consider whether the child has a severe impairment. See *20 C.F.R. § 416.924(c)*. A severe impairment is an impairment that is more than a slight abnormality. See *id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, *20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")*. See *20 C.F.R. § 416.924(c)*. Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings will it constitute a disability within the meaning of the Act. See *20 C.F.R. § 416.924(d)*. Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. See *20 C.F.R. § 416.926a(b)(1)*. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. See *20 C.F.R. § 416.926a(b)(1)*.

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to a disability in the Listings. See *20 C.F.R. § 416.926a(b)(2)*. A marked limitation is an impairment that is

"more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. See *20 C.F.R. § 416.926a(e)(2)*. An extreme limitation is "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. See *20 C.F.R. § 416.926a(e)(3)*.

**Discussion:**

This court reviews a decision by an ALJ "to determine whether it is supported by substantial evidence on the record as a whole." *Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir.2000); 42 U.S.C. § 405(g).* Our scope of review is narrow; we must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart 335 F.3d 726, 729 (8th Cir.2003);Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998)*. Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision. *Hunt v. Massanari, 250 F.3d 622, 623 (8th Cir.2001).* The issue on appeal is whether there is substantial evidence to support the ALJ's determinations under the three-step sequential test. The undersigned employs the same three-step sequential test as the ALJ to evaluate the evidence and the alleged disability. Because plaintiff does not contest the ALJ's finding regarding substantial gainful activity, we bypass the first step. Under the second step, we agree that claimant's impairments of sleep apnea, surgery and maintenance for cleft palate and scoliosis are severe. Consequently, the pivotal issue remains the third step, namely, whether

AO72A
(Rev. 8/82)

there is substantial evidence in the record to support the finding that claimant's impairments do not rise to the medical or functional level of severity necessary to equal a disability listed in Appendix 1 of 20 C.F.R. § 404, Subpart P.  See *Pepper ex rel. Gardner v. Barnhart 342 F.3d 853, 855 (8th Cir.2003)*.

The regulations provide:

(a) *Basic considerations.*  We consider all relevant information (*i.e.,* evidence) in your case record.  The evidence [] may include information from medical sources, such as your pediatrician, other physicians, psychologist, or qualified speech-language pathologist; other medical sources not listed in § 416.913(a), such as physical, occupational, and rehabilitation therapists; and nonmedical sources, such as your parents, teachers, and other people who know you.

   *(1) Medical evidence -- (i) General*.  Medical evidence of your impairment(s) must describe symptoms, signs, and laboratory findings.  The medical evidence may include, but is not limited to, formal testing that provides information about your development or functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents.  It may also include opinions from medical sources about the nature and severity of your impairments.  (*See* § 416.927).

   *(ii) Test scores.*  We consider all of the relevant information in your case record and will not consider any single piece of evidence in isolation.  Therefore, we will not rely on test scores alone when we decide whether you are disabled.  (*See* § 416.926a(e)) for more information about how we consider test scores.

*20 C.F.R. § 416.924a(a)(1)(i)-(ii).*

At the time of the administrative hearing, the claimant was 15 years old and was in the tenth grade (T. 33-34).  Both the plaintiff and the claimant testified at the hearing, and plaintiff was represented by counsel (T. 29).  The administrative hearing was conducted on October 20, 2003 (T. 29-71).  The ALJ issued an unfavorable decision on dated February 17, 2004 (T. 14-24). The Appeals Council denied the plaintiff's request for review of the decision by Order entered September 17, 2004, thus making the ALJ's decision the final decision of the

-5-

AO72A
(Rev. 8/82)

Commissioner (T. 5-7).

As has been noted, there are several ways to demonstrate that a child is disabled. *20 C.F.R. § 416.926a(b).* If the ALJ had found that the claimant had an extreme impairment in one functional area or marked impairments in two functional areas, then he would have been entitled to benefits. *20 C.F.R. § 416.926a(d).*

Here, the ALJ assessed that the claimant has: no limitation in the domains of: acquiring and using information; moving and manipulating objects; and, self care. She was found to have less than a marked limitation in the domains of: interacting and relating with others; attending and completing tasks; and, health and physical well-being. (T. 22-23). The ALJ's findings are supported by substantial evidence of record.

After carefully examining the record, the undersigned concludes that the ALJ's determinations are supported by substantial evidence in the record. There is little evidence of an impairment or combination of impairments which seriously interferes (marked), with the claimant's ability to independently initiate, sustain, or complete activities in two or more broad areas of functioning, or which interferes very seriously (extreme), with his ability to independently initiate, sustain or complete activities, in one domain.

Doctors at Arkansas Children's Hospital, Cleft Palate Program, evaluated the claimant on June 13, 2001. Dr. Robin Dyleski observed "no social work needs were identified. Will follow as needed." (T. 374) An evaluation from the Mountain Home Public Schools dated January 17, 2001, determined "[e]valuation data do not substantiate the existence of a disability consistent with state and federal regulations implementing IDEA." (T. 194). The document stated further:

> Desiree is presently wearing a retainer on her top teeth and is scheduled to get additional braces on her lower teeth. This is causing her speech sounds to be distorted. Her speech in intelligible but noticeable in error. This condition is felt to be temporary and is not creating a major adverse affect on her communication skills at this time.

(T. 195). It was recommended that the claimant be dismissed from speech therapy (T. 195).

On November 19, 2002, Ms. Tammy Quick, the claimant's public speaking teacher, completed a school questionnaire (T. 220-223). Ms. Quick found no significant problems with respect to the claimant in any area, including the following: communication; social functioning; concentration, persistence and pace; and, behavioral function (T. 221-222). In addition, she commented:

> Desiree is a wonderful, young lady. She has never shown any type of behavioral problems while in my presence. She seems to be well-liked by her classmates. She is an excellent speaker in speech class and does her work.

(T. 223).

A Function Report completed by the plaintiff on September 23, 2002, noted claimant has no problems: seeing; hearing; understanding and using what she has learned; physically; socially or behaviorally; taking care of her personal needs; paying attention and remaining on task; completing her daily activities; or, communicating (T., 119-126). Plaintiff reported that the claimant does have problems talking clearly, but that her speech can be understood most of the time by people who know her well, and some of the time by those who do not (T. 124).

On September 25, 2003, the claimant's treating physician, Dr. Perry Wilbur wrote the following to plaintiff's attorney:

> Desiree Mabe is a patient I care for in my practice who has a cleft palate and lip repair and scoliosis. As far as her cleft lip and palate repair goes, she is able to be gainfully employed and should have no problems functioning in society

-7-

except for cosmetic results. Right now, they are working on her orthodontic and mid-face development, and will (sic) probably need another surgery for that in the future.

Her back has a significant degree of scoliosis and has been seen and followed at Shriner's Hospital in St. Louis, Missouri. They think her progression of curvature has stopped and no further intervention needs to be done at this time. She has been having back pain and I have started to look into this a little more closely. I cannot say at this time what her outcome is going to be and if further intervention is needed. If further intervention is needed, I will defer her outcome to the doctor's at Shriner's hospital.

I hope this helps your cause. If you have further questions about Desiree's care, please call our office.

(T. 343). Dr. Wilbur also completed a Mental Residual Functional Capacity Questionnaire, on April 3, 2003). He found no limitations (T. 309-314).

An MRI of the lumbar spine performed on September 26, 2003, showed only "minimal scoliosis" with "no significant acute process" and "no central nor foraminal spinal stenosis associated with this scoliosis." (T. 342).

On June 23, 2003, Dr. James Aronson, attending physician at Arkansas Children's Hospital, examined claimant. Dr. Aronson noted claimant "is not really having a lot of back pain and denies radicular symptoms." In addition, he summarized:

Based on her skeletal maturity and the size of this curve, I do not think treatment is indicated. I do not expect progression. Therefore, she has no restrictions. She may return on an as needed basis.

(T. 344).

On April 11, 2003, Vann Smith, Ph.D., completed an RFC (mental), after conducting a single examination of the claimant, which included testing (T. 321). He diagnosed the claimant with: organic brain dysfunction, secondary to her conditions of cleft palate and sleep apnea,

-8-

and neurodevelopmental delay, not otherwise specified. Dr. Smith observed that the claimant was seriously limited, but not precluded from: maintaining regular attendance; maintaining attention for two hour segments; completing a normal workday without interruption from psychologically based symptoms; performing at a consistent pace; responding appropriately to changes in a routine work setting; understanding and remembering detailed instructions; carrying out detailed instructions; dealing with stress of semiskilled or skilled work; traveling in unfamiliar places; and using public transportation (T. 323-324). In all other areas, Dr. Smith found the claimant's abilities were limited, but satisfactory, and he assessed her Global Assessment of Functioning to be at 60 on the scale, reflecting moderate symptoms or moderate difficulty in social, occupational or school functioning (T. 331).[2] See *Diagnostic and Statistical Manual of Mental Disorders, p. 34 (4th Edition Text Revision, 2000)*.

Plaintiff testified at the administrative hearing that the claimant was "in a bad mood" and "depressed" (T. 62-63). After the hearing, on October 31, 2003, claimant was evaluated at Ozark Counseling (T. 405). The claimant complained of decreased concentration and stated "I'm moody." (T. 405). She was apparently seen on one only occasion, October 31, 2003, by Tammy Berke, Ph.D., who spent just under one (1) hour with her (T. 407). Ms. Berke diagnosed claimant with: attention deficit hyperactivity disorder; social anxiety; and, major depression recurrent, at first recorded as mild, which categorization was then crossed out and changed to "moderate" (T. 409)

---

[2] It is noted that a Global Assessment of Functioning of 61, just one point higher on the scale would indicate some mild symptoms or some difficulty in social, occupational or school functioning. See *Diagnostic and Statistical Manual of Mental Disorders, p. 34 (4th Edition Text Revision, 2000)*.

AO72A
(Rev. 8/82)

Claimant reportedly "doesn't want to go to school", and it was felt she would be absent about two (2) days per month (T. 416). Ms. Berke opined that the claimant meets and functionally equals listings 12.04 and 112.11, mood disorder and ADHD (T. 425). Claimant was seen on November 21, 2003 by Steve Austin, M.D., for a medication check (T. 406). He prescribed an antidepressant and samples were given. The record contains no evidence that the claimant was ever seen by either Dr. Austin or Ms. Berke, after these initial visits, and although counseling was suggested by Dr. Austin, the record contains no evidence of such taking place.

If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993).* Furthermore, the ALJ properly focused on the claimant's ability to function despite her impairments, rather than on diagnoses. See *Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir.1990).*

**Conclusion:**

Accordingly, the undersigned concludes substantial evidence of record exists to support the ALJ's decision that the claimant's impairments are neither medically nor functionally equal to a listed impairment, and ultimately, that the claimant is not disabled. Therefore, it is determined that the decision of the ALJ, denying benefits to the plaintiff on behalf of the claimant, should be affirmed and the Complaint should be dismissed with prejudice.

ENTERED this 10th day of February, 2006.

        /s/ Bobby E. Shepherd
        HONORABLE BOBBY E. SHEPHERD
        UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)